Good afternoon, counsel. Good afternoon, my colleagues. Ms. Rudolph, would you announce our case for argument? 21-3690, Southern Iowa, United States v. Marlin Thomas. We'll hear from Ms. Quick. May it please the court. The incident prosecution of Mr. The agreement banned new charges for any other federal criminal offense that arose from or directly related to the investigation. These terms are unambiguous, and the new charges fall under this non-prosecution clause. Now, I'd like to start first with the discussion of reasonable belief language as it's used in contract and plea agreement interpretation and how it should be applied in this court. I think that was critical to the district court judge's order, and it's also a major part of the government's argument on appeal, as I see. Reasonable belief, as it's used in this context, means courts objectively look at the language itself to see what a reasonable defendant or reasonable person would think is covered by the terms of the contract. What reasonable belief does not mean is that a court or a prosecutor can come back after the fact, with the benefit of hindsight, and do a kind of Monday morning quarterback and determine what they think those terms should mean now that the chips have fallen. Generally, it comes into play with the defendant who's trying to say, well, I think this agreement required the government to file a motion for substantial assistance, and courts say, no, it does not matter what you subjectively thought. We go by a reasonable belief by what the plain language of the agreement states. Here, the plain language is unambiguous. Case law, and I think the parties are in agreement, that are rising from and directly relating to what those terms mean, and the case law has, both from this circuit and others, has detailed what those phrases mean. Rising from just needs to be originating in or have some connection with. Generally, it means something flows from that point. Directly related to, again, requires a connection or some kind of causation. Where the I don't know if you want to say red herrings, but. Ms. Quick, can I ask you a question there? Yes. Didn't the district court decide that the term here, this investigation, was ambiguous? I believe so, your honor. And so, um, the court said it was going to take evidence on the meaning of the term. Do you think the court actually took evidence on the meaning of the term? I don't think the court took evidence on the meaning of the term, and I think that is, that's kind of, I think, where the lines get blurred in this case. It's a question of external evidence or extrinsic evidence for interpretation versus how we think it should be applied. And in the district court's analysis, when talking about this investigation, there was some extrinsic evidence that was put forward, but the analysis seemed to flow not to, okay, how is this investigation defined? It is, do I really think Mr. Thomas, when he signed this agreement, thought it would prohibit this later prosecution? Does that really seem reasonable? If that answers the court's question, I think that's more how the analysis went before the district court, and I think that sets a danger. I agree, I kind of agree with that. The court said it was going to take evidence to assist it in determining what the term means, but it really, in my view, it really didn't take evidence on the meaning of the term. It took evidence on the application of the term, and I wondered if that has some significance in the case, but you've answered the question, so go ahead. And I believe it does have significance, but as far as how to define this investigation, I'm not conceding that it means this heroin investigation by any means, but I don't know if, at the end of the day, it really matters, because here... Let me ask you a question about that, because I think I know where you're going. Is it your position that this investigation means categorically any subject matter that came up during this investigation, which I think it's pretty clear that sex trafficking did come up during the heroin investigation, or does it mean that we have to go and look at each individual situation and determine whether each individual victim arose out of or was discovered as a result of the, we'll call it, for lack of a better term, the heroin investigation? Does that make sense? Yes, and I think it's your first point, Your Honor, the first option, and the language of the plea agreement is crucial in this aspect in that it doesn't say directly arising from, it simply states arising from, which is where this language of originating from and flowing from, and we know from the prosecution memo and the other evidence presented that the prosecutors, based off of right from the jump, noting that there's heroin trafficking and sex trafficking, wanted to continue to pull on those threads, look at these cell phones, and find more victims. And as the briefing lays out, and I can discuss as well, shows how each victim was reached, and potentially they were found on a cell phone, or by talking to one victim, law enforcement then who then provided the name of another victim. I think the second option, and that's where the government talks about the attenuation doctrine, I think it's kind of the similar idea is, well, do we have to show that every single victim directly came from what occurred in 2018 in that investigation? And our position is no. And reliance on the attenuation doctrine is problematic because there's competing principles and concerns with those two ideas. Attenuation doctrine is about protecting government interests and noting if evidence is obtained so far from the constitutional violation, there's no deterrence and no need to exclude it. But here, when interpreting the terms of the plea agreement, it's about a defendant's due process rights. And as the case law establishes, that kind of has to rule the analysis when interpreting these plea agreements. So I don't think, I think if we can show the steps as we have, how all of these victims arose from that initial investigation, that's sufficient. And also, there you are. Go ahead and finish your thought. Just the last point to that and why attenuation is not instructive here, just note that while it says directly relating to, the plea agreement does not say directly arising from, which is interpretation is much broader. It does not require that it directly stem from that prior investigation. I want to step back and ask a question about this investigation again, because I think that if you look at this investigation, if in fact that term is ambiguous, it may be appropriate for us to look at the complaint, which is a drug trafficking complaint, the factual basis, which is limited to just the drug trafficking facts and say, well, this investigation is really all about the drug trafficking aspect of it. Because as Judge Grunder says, there's no question that everyone was aware that there was a sex trafficking element within this drug trafficking conspiracy, right? And so at the end of the day, or this charge, the question is, is it really ambiguous? If it's ambiguous, do we look to, like I said, the plea, the change of plea, the factual basis, or do we look at, and I know what your answer is, it's going to be just, well, you look at the whole investigation, what did they know? They could have brought whatever federal charges arose out of what they knew at that point and given their choice to use such broad language that all doubt should be resolved in our favor anyhow, right? But why is it wrong to say, this investigation is ambiguous, maybe we ought to look at the plea documents? Your Honor, I'm not aware of any case law or any rationale to indicate that this court would be limited to, if it's truly ambiguous, limited to just documents such as the complaint or the indictment itself, that the only extrinsic evidence could be those kinds of pleadings. Even if the court were limited to kind of more just what was actually filed at the district court, that also supports that this investigation is not limited to just heroin activity. As from the very beginning of this 2018 prosecution, the prosecutors were discussing and bringing up and using as a basis for detention and both an increased sentence, Mr. Thomas's sex trafficking activity. So I don't know of any basis why the court should be so limited as to that extrinsic evidence. And considering just the backdrop of this analysis that this court must consider ambiguities in favor of the defendant that it would be improper to in this circumstance. And as far as, I don't know if this goes to more of an argument as to why it's not ambiguous, but I also think treating charges or indictment as the only basis for analyzing what this investigation means or treating those terms as synonymous is inconsistent with principles of contract interpretation. Because looking at Mr. Thomas's, looking at that plea agreement as a whole, the prosecutors when drafting this plea agreement were able to use phrases like charges, indictment, and other provisions of the plea agreement. But in this non-prosecution clause, they didn't use that phrase. They used this investigation, indicating that that is a different phrase with a different meaning. Along the same lines, to read this investigation to be so limited as to these charges or this indictment would render that immediately preceding paragraph virtually meaningless or having very little teeth or weight. And that if all it was doing was dismissing the pending charges, what was the point of the non-prosecution clause? Ms. Quick, if we did not take sort of a subject matter interpretation, in other words, if we didn't conclude that this investigation included all sex trafficking charges as well, and we looked at the individual victims on a situation-by-situation basis, are any of them, arguably, did any of them not arise from this investigation? In other words, were any of them independently developed? And if I recall right, isn't a similar procedure used in like a Castigar hearing? I am not familiar with the Castigar hearing or how that would be done, but our position is that all of the victims in the indictment do arise from. And in this case, it starts with the search warrant execution, and there is, GB is found, and she's not a victim in the indictment. But based off of what they learn at the, when they execute the search warrant and interview her, GB was in the initial indictment, wasn't she? She was in the initial indictment, but I believe the charges were all eventually dismissed. My apologies. But then the U.S. Attorney's Office gets involved. The U.S. Attorney's Office learns, because of this heroin investigation, learns about GM, the minor victim A, learns about GB. At this point, they get a search of a cell phone, find more victims, find further evidence of sex trafficking. That leads them, in the discussion with GB, leads law enforcement to talk to an individual, BB. BB tells law enforcement about KT. And here's a crucial point, I think it's somewhat glossed over, but I think the government tries to show a break after KT, as far as their investigation, and there is none. Because even though KT discusses Marlon Thomas in a separate proffer, involving a separate defendant, it's not Marlon Thomas' case, Officer Fong acknowledged, and the U.S. Attorney's Office conceded, that during that separate proffer, Officer Fong asked KT about Marlon Thomas due to the information he received from BB. So then, KT discusses that she received heroin from Marlon Thomas and was trafficked one weekend by him. KT, based off of what Officer Fong learns on KT, and he again admitted this, he searches their DMPD database, finds information about S.A. He admits that that was based on the S.A. and JW. And I'm looking at the concession, it's RDoC number 36, I think it's page 10, where Mr. Fong states, I looked on the database for more potential victims because of what KT said and found S.A. And that's, she's count two. And then S.A. leads them to JW, JW leads them to EJ. And then we know from the officer's statements, LG and KD and NL are found because they went through the cell phone looking for names, looking for numbers to try to find additional victims. And NL was also found in the back page subpoenas, which were sent out at the time of the control dives. I see I've gone over my time. Ms. Quick-Grebel, we will give you a couple minutes in rebuttal as well. Thank you. Mr. Eslick. Thank you, Your Honor. May it please the court. This court should affirm the district court's dismissal of Marlon Thomas's motion to dismiss the surviving counts. As the Supreme Court said in Santabello, a defendant is entitled to all that is reasonably due him pursuant to a plea agreement. But I think in this case, Ms. Quick's summary of how a party's subjective belief is inappropriate for consideration to determine the unambiguous meaning of a plea agreement applies here. His interpretation of this agreement is unreasonable. So, so wait a minute, your position is that it's unambiguous? Yes, Your Honor. Our position is that it is unambiguous and that it unambiguously mean that? It unambiguously means, Your Honor, or unambiguously refers to the 2018 heroin investigation. The extrinsic evidence supports that conclusion and none of the surviving counts arose from it. If it's unambiguous, we don't need to worry about extrinsic evidence. And I tend to agree with you. I think it is unambiguous. When this case started, there would have been a file presumably turned over to the defense, right? That's correct, Your Honor. And it would have included interviews and police reports and things like that, right? That's also correct, Your Honor. And that would have been, in essence, the investigation, right? That's correct, Your Honor. In fact... And in there, in there would have been a fairly extensive amount of evidence related to sex trafficking, right? I don't believe so, Your Honor. Certainly it had the interview of GB, who was there during the arrest or the search. And she talked, she talked about sex trafficking. It did, Your Honor. So how can, how can sex trafficking, at least as a topic, not be part of, quote, this investigation? I did not mean to suggest, Your Honor, that the topic of sex trafficking was somehow not discussed or brought up in the early phases of this case. It was. And therefore, wait a minute, wait a minute. And I don't believe the sex trafficking was part of this investigation. It was part of the file that was handed to him from which he would reasonably believe that he was not going to be charged, right? Not based on the unambiguous text of the plea agreement, Your Honor. And if I could, I'll start there. There's only one reasonable interpretation of the plea agreement here, and that is it concerned only heroin trafficking. Uh, here, the thing that the plea agreement goes on to exclude three areas, right? Which, by the way, are not at issue before this court, right? That's correct, Your Honor. Okay. Well, why didn't it just exclude sex trafficking and made it crystal clear? Because the rest of the agreement is crystal clear, Your Honor. There's only one investigation being discussed. And although sex trafficking is referenced, the idea that sex trafficking charges spanning 10 years, eight states, up to 17 victims, eight of which were charged, is simply not contemplated by the plain terms of the agreement. Why not? I just explained how, you just explained to me how sex trafficking was included in the this investigation. Why wouldn't a reasonable defendant conclude that he's not going to be charged on sex trafficking? If a gun, if a gun would have been found during the search warrant, okay? And this thing said no further charges based on this investigation, do you think you could have charged a gun offense too? No, Your Honor, I don't. And I think there's other charges that are covered by that, by this non-prosecution provision, including obstruction of justice for Mr. Thomas flushing heroin down the toilet that day. Other distributions of heroin that we know occurred that were never charged. Guns that might have been found at the execution of the search warrant would have fallen within this provision. But sex trafficking was not the purpose of this investigation. This investigation was limited to the rest of the agreement and the context that the entire agreement creates. And when you look at the entire agreement, it's not reasonable for somebody reading this agreement to believe that somehow these sex trafficking charges are going to be covered. Well, isn't there more than, isn't there more than just that? I mean, if you look at it, in this case, going back to its very beginning, there were preliminary hearings, there was a detention hearing, there were discussions about minor victims, there were discussions about dangerousness as a result of this, there were discussions at various points about sentencing enhancements that might arise out of this as relevant conduct. Doesn't that make that all part of this investigation in some way, at least from the point of view of a reasonable defendant? No, your honor. In fact, Mr. Thomas's attorney was actually the first party to bring up the minor victim A sex trafficking offense pending in state charge at the detention hearing. We referenced that at page 53 of our brief, and his attorney in the heroin case later said that that was perfectly normal and expected, given that Mr. Thomas was on pretrial release for that pending state charge at the time he was charged with the heroin offense. So the fact that it was referenced at the detention hearing is a red herring. On top of that, the prosecution memo, as the prosecutor testified to here, goes beyond the indictment, goes beyond the actual kind of charges that are being brought here. And so anything in there also does not suggest that somehow this investigation covered at the point of the heroin charges being brought, this amorphous unlimited number of victims sex trafficking offense, when at that time only two sex trafficking victims were known. One being minor victim A, which as the district court said was entirely known at that point because she had been charged, or the case for her had been charged already, and then GB. And as Judge Greger pointed out, that was referenced, and GB being trafficked was referenced, but those charges were dismissed. I mean, it's clear to me that the government was anticipating filing charges through this prosecution memo related to sex trafficking before or at the time the plea agreement was entered into, right? I think there was a desire to do so, your honor. I don't know if I would say it planned necessarily that it would, particularly given the fact that at the time of this plea agreement, prior to the plea agreement being entered, the government had chosen not to pursue charges on behalf of minor victim A. That decision was reached around late April 2018, and the plea agreement was signed in mid-May 2018. So there was a desire to continue looking into or building a case, but I wouldn't say the government thought there was a case already made. I do want to turn briefly, return back to the unambiguousness of the plea agreement. I think the other things that support the conclusion that the plea agreement was limited only to heroin trafficking activity is the fact that that's the only topic discussed in the plea agreement. The penalties in paragraph four are limited to count one, the elements in limited to count one. The factual basis in paragraph nine limited to heroin dealing. Paragraph 12, the guidelines factors limited to the money and amount of drugs that were dealt as part of the conspiracy. There's no mention anywhere of victims, restitution, the right to participate in the proceedings. There's no victims of sex trafficking at all. The absence of any reference to sex trafficking and the absence of an express promise to the effect that the government is not bringing or is not going to bring further sex trafficking charges, as this court has said in Coleman and in Stockdall and analogous situations, as the Seventh Circuit said in Brown, as the D.C. Circuit said in Ramsey, when it's such extraordinary relief is being sought by a defendant, an express promise is needed and the absence of an express promise and here the absence of any reference whatsoever. It's not extraordinary relief. It's like a contract interpretation. It's extraordinary in the sense that what Mr. Thomas is saying is that his plea to one count of conspiracy to distribute heroin, which occurred over a month in 2018, again balloons to cover eight victims. But the government made the deal. The government drafted the plea agreement that says no further criminal charges arising from this investigation. It's not his fault if the government drafted it poorly. No, that is true, your honor. That is true and I fully admit that the government, if there are ambiguities that are not cured by extrinsic evidence, the government must be or the contract must be construed against the government. Right, but here is there even if we were to say that this was ambiguous, was there any extrinsic evidence that made it clear that this sex trafficking would be excluded? There was, your honor, and I'll start. There's three main areas, but I think there's up to five areas that I think show that these sex trafficking charges were not being foreclosed to the government. First of all, there was evidence taken as to the specific meaning of the term disinvestigation, and I'll point you to Motion to Dismiss, the transcript at pages 14 and 15, where Mr. Thomas's attorney said the disinvestigation was limited to the discovery in the heroin case, and she later said that that discovery only covered one of the victims, GB victim three. The prosecutor likewise testified at multiple points throughout the transcript that when she read the phrase disinvestigation, she read it to mean the control buys, the search warrant execution, and that they wouldn't charge anything else related to heroin trafficking based on what they found at the house. On top of that, in the second area I'll point you to is that there was no specific promise or no promise that the government would not charge these offenses, and I'll point you there specifically to the defense attorney's testimony at page 13, 21, 36 to 37 of the Motion to Dismiss transcript, where she said there was no promise by the government not to pursue these charges, there was no separate agreement to that effect, and that she never told Mr. Thomas there was such an agreement. She went on at pages 28 to 29 to say that she told Mr. Thomas it was in his best interest to take the plea agreement, because hopefully the federal government would at that point choose to forego the sex trafficking charge that was then pending and leave it to the state. As we said in our brief, if hope was an issue, that in and of itself indicates that there was not an agreement by the government not to pursue these charges. The prosecutor added that her view was that she did not have the authority to forego those charges, and that if it had included such a promise, she would not have agreed to that agreement. Who didn't have authority? The prosecutor said, your honor, that she did not have the authority without going to a supervisor to enter into an agreement to forego those charges. She certainly had apparent authority. As an assistant United States attorney, she did. To the defendant, perhaps, but I think there's testimony in the transcript, your honor, that would suggest the defense attorney was well aware that there were supervisors that would have to approve the plea agreement. Mr. Strashley, let me ask you this question. I asked Ms. Quick, if we were to conclude that this included sex trafficking as a topic, are you able to establish that any of the victims that were subsequently charged did not arise out of the heroin slash sex trafficking investigation? Yes, your honor. None of the victims of the surviving counts arose from the sex trafficking investigation. I'll walk through them with my remaining time, if you'd like. I'll start with minor victim A. Minor victim A, as the district court said, all of the facts known... Can you give me initials on that? Minor victim A, GM. Sorry, your honor. GM were her initials. As the district court said... The government knew of GM prior to the... I mean, they used GM as part of the detention hearing. Again, your honor, Mr. Thomas was the one who brought GM up first at the detention hearing. The records show the government was aware of that. It was, your honor. I don't mean to say the government was not aware. I mean to say the facts supporting the charges for GM could not have arisen out of the heroin investigation because they were known prior to the heroin investigation. The same goes for S.A., at least in the regard that she had made her reports about Mr. Thomas in 2013 that included allegations of sex trafficking. And then really quickly, I'll try to address Ms. Quick's connection from G.B. all the way to S.A. and show why that's not exactly how it played out here. First of all, document 30-9, G.B. references B.B. during an interview as being associated with Mr. Thomas. 30-13, B.B. then mentions K.T., does not say that K.T. was prostituted or sex trafficked by Mr. Thomas, but that she worked independently as a prostitute. And then 30-14, K.T. was interviewed. She mentions no other women as working for Mr. Thomas. As the district court said at addendum page 16 and 25, and as Mr. Fong testified to, the proffer was part of a separate investigation. In fact, at the sentencing hearing on Mr. Thomas's first or the heroin charges, Mr. Fong was asked, did you ever investigate Mr. Thomas by the defense attorney? And he said, no, I did not. And then briefly, your honor, if I may, I'd like address the argument about phones, and if not, I can go ahead and wrap up. No, I'd actually like to hear your response to the phone searches that created additional victims that were identified, as I understand it, and also led the subpoenas to back page, which led to additional victims. Thank you, your honor. First, I'll address your point about the subpoenas. The first subpoena was issued here, and it's available at document 42-1. The first subpoena was issued here on February 9, 2018. That was prior to the government encountering GB at the search warrant execution. So at that point, the only evidence of sex trafficking the government had derived from its knowledge of the state sex trafficking case involving minor victim A, GM. And so it could not have derived from the heroin investigation, again, because the facts about GM were already known prior to the heroin investigation beginning. Turning to the phones, as we pointed out in our brief at page 13, only two phones were at issue. One was a phone found during the investigation of GM in 2017. So again, that phone could not have derived from the heroin investigation. The other phone was from 2018. It was seized from Mr. Thomas at his house. I think there's a few things here I would mention is why that phone does not really result in any evidence or any charges that resulted against Mr. Thomas. First of all, in 2018, the government was authorized only to search for evidence of Title 21 violations. Secondly, Officer Carney did not obtain the federal warrant to search that phone. And this is available in the record. He did not obtain that warrant until April 24, 2020. By that time... Wait a second. You just said that the government was only authorized to investigate Title 21? That's correct, Your Honor. At the time, the search warrant affidavit that I have has an attachment that talks about during the examination of the contents. This may be for the contents of the phone. Will Shusin discovered evidence of human trafficking and prostitution, including outgoing and incoming text messages. So that affidavit, I believe you're looking at, Your Honor, without knowing the number, I believe that's Officer Carney's affidavit from 2020. So in 2018, Officer Will Shusin's, which I can point you to that affidavit, Officer Will Shusin's affidavit is available, I believe, at document 30-10. 30-10. That's the 2018 search warrant affidavit. In that affidavit, the government was allowed, as a result of the search warrant, was allowed to investigate. Two years later, Officer Carney applied for a new warrant and requested permission to search for evidence of sex trafficking. He did not do that until April 24, 2020. And by that time, only three victims had not yet been identified. Those three victims were EJ, KD, and NL. And if you look at his reports of all of his, all of the interviews he did, Officer Carney, you'll see that there was only very limited information he gained about sex trafficking from that phone. First of all, there's an obvious reason for that. One being the phone was from 2018, but most of the sex trafficking charges occurred in the early 2010 period. Most of them occurred at least three years before 2018. And then finally, when you look at Officer Carney's reports, the evidence he got from those phones, you can tell he identified the victim, he interviewed the victim, and then he looked for corroborating evidence on the phone. And for all but one victim that was charged, the only thing he ever found on the phone, based on his report, was a contact with that victim's number in the phone. Only one victim had anything of substance, and that was victim NL. And there were texts indicating that NL had engaged in prostitution with Marlon Thomas. All right. Thank you, Mr. Essling. Thank you, Your Honors, and thank you again for accommodating my request to move the argument. I very much appreciate that. In sum, Mr. Thomas's interpretation of this agreement, we believe, is unreasonable. This court should reject it and affirm the district court's decision. Thank you for appearing today. I hope you're feeling okay. I'm feeling much better, Your Honor. Thank you. Very good. Ms. Quick, we'll give you three minutes, please. Rebuttal. Thank you. I'd like to start kind of where the prosecution left off, and this question or this fact that law enforcement got a second search warrant that allowed it to search for sex trafficking evidence is immaterial to this question for this court. It's irrelevant. Because what matters is whether it's arising from or directly related to, and that's not some kind of break that somehow treats this as it's not connected. Because to get the sex trafficking warrant for the phone, the law enforcement officers noted that they had found evidence of sex trafficking when they initially searched the phone after it was seized. So it is arising from, regardless of the fact that they got a second warrant. And I would note that as far as discussing, you know, what the defense attorney stated or what the defense attorney knew, I don't think defense attorneys can unilaterally decide what a plea agreement states. And it would be troubling to do so, especially in these circumstances, because the defense attorney does not always know what the prosecution is doing behind the scenes. They can only know, based off of the plain language of the plea agreement, and that is what Mr. Thomas could rely upon under these circumstances, what the plea agreement stated. It did not state Title 21 offenses. It stated any other federal criminal offense arising from or directly relating to this investigation. Mr. Thomas knew that they had of sex trafficking, and it was in fact used against him repeatedly throughout this initial prosecution, increasing his sentence, I think, not 100%, but almost double the top of this guideline range based off of the sex trafficking conduct. Finally, I would note that if there is issues with this plea agreement language and the government now stating it is too broad, that fault lies with the government. The government is the repeat player in this, not Mr. Thomas. The government, and they did, knew about this conduct and knew that if they wanted to further investigate, it is their failure for failing to narrowly tailor this non-prosecution clause to not include any federal criminal offense that could arise from or directly relate to the investigation. In conclusion, I would just note, I know we talked about our different interpretations and our different ways of analyzing this plea agreement, but as this court has said, even if the language of the plea agreement did not foreclose the government's interpretation beyond all doubt, the district court was bound to construe the agreement against the government, and that's what this court must do in Mr. Thomas' case. For those reasons, we ask this court to reverse the denial of the motion to dismiss. Actually, if I could just point, one final point I wanted to make, as far as how KT led to SA, I would point to the government's own words in Docket 36, page 10, and there the U.S. Attorney's Office, in response to the motion to dismiss, said, quote, due to Officer Fong's participation in that proper interview with KT as part of the other defendant's case, Officer Fong checked DMPD's records to see if there had been any reports or complaints about defendant. Cites to Defense Exhibit B. In doing so, Officer Fong discovered that there were two unresolved reports of race against defendant, one being SA. So the government's already acknowledged that there's a connection, and that's how SA opposed this investigation. I apologize for going over my time. Well, we appreciate it. It's an interesting and difficult case, and we appreciate both of your appearance and arguments today, and the court will issue an opinion in due course.